UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

BEE'S AUTO,INC., a Florida corporation,
and WAYNE WEATHERBEE,

<div align="center">Plaintiff,</div>

-vs-                                        Case No.  5:11-cv-525-Oc-10PRL

CITY OF CLERMONT,

<div align="center">Defendant.</div>
_____/

# **O R D E R**

This litigation arises from a dispute about whether Plaintiffs Bee's Auto, Inc., and Wayne Weatherbee may operate an automobile repair shop and storage facility on a parcel of property owned by the Plaintiffs in Clermont, Florida.  The case also involves a separate dispute as to whether the Plaintiffs can post signs on that property complaining about the City of Clermont's government.

The Plaintiffs have filed a six-Count Amended Complaint against the City alleging constitutional claims under 42 U.S.C. §1983  for purported violations of the Plaintiffs' procedural and substantive due process rights, violations of their First Amendment right to free speech, an inverse condemnation/unlawful takings claim under the Fifth Amendment, and a state law claim for equitable estoppel (Doc. 27). The Plaintiffs seek monetary damages as well as declaratory and injunctive relief.

The case is now before the Court on the City of Clermont's motion for summary judgment (Doc. 53), to which the Plaintiffs have filed a response in opposition (Doc. 67), and the City has filed a reply (Doc. 67).  For the reasons discussed below, the Court finds that the motion is due to be granted in part and denied in part.

## Undisputed Material Facts

### I.      The Plaintiff's Acquisition of the Subject Property

Plaintiff Bee's Auto, Inc., ("Bee's Auto") is a Florida corporation with a registered address of 21919 U.S. Highway 27, Leesburg, Florida 33748.  Bee's Auto is an automotive repair business that has been operating since 1982 at 899 West Montrose Street, Clermont, Florida 34711.  The property located at 899 West Montrose Street is owned by Margaret Ann Weatherbee, the mother of Plaintiff Wayne Weatherbee.  Mr. Weatherbee is the owner and president of Bee's Auto.

The parcel of property at issue (the "Subject Property") is located at 898 West Montrose Avenue, Clermont, Florida, diagonally across the street from Bee's Auto's current business address.  The Subject Property is within the jurisdiction of the City of Clermont, and is subject to the City's regulations, ordinances, Comprehensive Plan, and land development code.  The Subject Property contains a building that is approximately 1,118 square feet in dimension, including two enclosed bays, an office, two bathrooms, and an open canopy structure.

The Subject Property was utilized as an automotive repair business from 1940 through March 2003, and title has passed through several different owners.  The Subject Property was purchased by Charles Neimeyer, Jr. and his company A&S Automotive, Inc. in 1994, and was owned by them until February 28, 2006.  Mr. Neimeyer operated A&S Automotive Center, an automobile repair business, on the Subject Property until March 2003, at which time he abandoned the business and the property.  The utilities were shut off in May 2003, Mr. Neimeyer did not pay any occupational taxes after July 2003, and A&S Automotive Center did not possess an occupational license to operate on the Subject Property after August 2004.  Mr. Neimeyer dissolved A&S Automotive, Inc. as of September 19, 2003.

The Subject Property remained abandoned and unused from March 2003 through February 28, 2006.  During this period, Mr. Neimeyer allowed Mr. Weatherbee to park cars on the Subject Property in exchange for Mr. Weatherbee providing lawn maintenance service.  The Subject Property was not used as the site of an automotive repair business during this time.

On February 28, 2006, the Plaintiffs purchased the Subject Property from A&S Automotive, Inc., which by that time was a dissolved corporation, for $250,000.  The Plaintiffs intended to move Bee's Auto's automotive repair business onto the property (Doc. 27, Ex. A).[1]

---

[1]Mr. Weatherbee paid Mr. Neimeyer an additional $40,000 for A&S Automotive Center's (continued...)

## II.     The City's Zoning of the Subject Property and Conditional Use Permits

The City of Clermont's Comprehensive Plan Future Land Use Element and Future Land Use Map dictate the allowable uses of a parcel of land located within the City's jurisdictional limits.  The City's zoning code further dictates the allowable uses for a parcel, the conditions under which the parcel can be used, and prescribes the procedures under which the owner can use the property.

On August 13, 1991, the City of Clermont amended its Comprehensive Plan through Ordinance 230-M.  At that time, the Future Land Use Element was amended to designate the property located at 898 West Montrose Avenue as "Central Business District (CBD) - Established Business District (EBD)1."  Property given this designation can be used for certain enumerated commercial business purposes, however, operation of an automotive repair business is not one of those purposes.  In other words, after August 13, 1991, the Subject Property was no longer permitted to be the site of an automotive repair business.

At the time of the 1991 Comprehensive Plan amendment, however, an automotive repair business was already operating on the Subject Property, and had been since 1940.  Under those circumstances, the City of Clermont considered the

_____

[1](...continued)
assets.  The Plaintiffs assert that they have expended a total of $363,000 for which they seek compensation.  This amount includes the purchase price, property taxes, utilities, renovations, mortgage insurance, and various expenses the Plaintiffs have incurred in an attempt to rezone the Subject Property for use as an automotive repair business.

automotive repair business operating on the Subject Property to be an allowed "non-conforming use" of the property.

The City defines "non-conforming uses" as business uses that are not permitted under the Comprehensive Plan, but are allowed to continue operating (they are "grand-fathered in") because they were in existence prior to a Plan amendment.  If the owner of property operating as a non-conforming use wishes to change or modify the property in any way, the owner must obtain a Conditional Use Permit from the City Council "for the reconstruction, enlargement or expansion of the non-conforming use where it is determined that such reconstruction, enlargement or expansion is not obnoxious or detrimental to the district in which it is located and where the denial of a Conditional Use Permit would create an unnecessary hardship on the owner."  See Affidavit of James Hitt, Ex. C, p. 3 and Ex. D (Doc. 54-4, p. 3 and Doc. 54-5).

A non-conforming use must continue to operate on the property without interruption in order to maintain permissible non-conforming status.  Specifically, "no non-conforming use of land or building shall be changed to another non-conforming use.  Any non-conforming use of land or building which has ceased by discontinuance or abandonment for a period of one (1) year shall thereafter conform to the provisions of this Land Development Code."  Id., Ex. D.  (Doc. 54-5).  Thus, if a non-conforming use is abandoned for one year or more, and the owner of the property subsequently wants to reinstate the non-conforming use, the owner must seek approval from the City of Clermont and obtain a Conditional Use Permit.

To obtain a Conditional Use Permit, the owner of a parcel of property files an application with the City and pays a fee, and then works with the City's zoning and planning department to ensure that the site plans for the property otherwise comply with the City's Ordinances and Comprehensive Plan.  The City's zoning and planning department will recommend modifications to the site plans to ensure compliance, and make further suggestions that would keep the proposed site plans in harmony with existing structures in the same area.  Once this process is complete, the application is forwarded to the Zoning and Planning Commission which votes to recommend approval or denial of the application, with or without the suggested modifications.  The Commission's recommendation, together with the Conditional Use Permit application, is then forwarded on to the City Council for final approval or denial.

The 1991 amendment to the Comprehensive Plan rezoning the Subject Property has not been modified since its enactment.  The Ordinance provisions governing non-conforming uses and Conditional Use Permits have been in existence since at least 1998 and have not been modified since that time.

## III.   The Plaintiff's Use of the Subject Property

The record is undisputed that an automobile repair shop operated continuously on the Subject Property as a "grandfathered" non-conforming use until March 2003 when the then-owner, Mr. Neimeyer, abandoned A&S Automotive Center.  There was no attempt to use the Subject Property as an automotive repair business until

approximately three (3) years later, when Mr. Weatherbee purchased the lot in February 2006.  Although Mr. Weatherbee was permitted to park cars on the property between March 2003 and February 2006 in exchange for lawn maintenance, there is no evidence that any automotive repair business operated on the property between March 2003 and February 28, 2006.

After he purchased the Subject Property, Mr. Weatherbee applied for an occupational license to operate an automotive repair business.  The City of Clermont denied the application based on the property's zoning designation as CBD-EBD1, and informed Mr. Weatherbee that because the Subject Property had been abandoned for more than one year, it had lost its non-conforming use status and was no longer grandfathered under the Comprehensive Plan.  The City then instructed the Plaintiffs to either apply for a Conditional Use Permit, or seek to have the Subject Property rezoned for his specific business use.

The Plaintiffs argue that the City never told them about the 1991 amendment to the Comprehensive Plan, or that the Subject Property had lost its non-conforming use status, until after the Plaintiffs had purchased the Subject Property and applied for an occupational license.  However, Mr. Weatherbee testified at his deposition that at the time he purchased the Subject Property, he was aware of a "rumor" that the Comprehensive Plan had been previously amended, and that there might be an issue concerning zoning.  In fact, Mr. Weatherbee urged Mr. Neimeyer to renew the occupational license on the Subject Property prior to the sale; however, Mr.

Weatherbee did not confirm with Mr. Neimeyer that the renewal had taken place.  Nor did Mr. Weatherbee ever conduct any investigation to determine the validity of any "rumors" concerning amendments to the Comprehensive Plan.

Mr. Weatherbee refused to apply for a Conditional Use Permit.  Instead, he embarked on a campaign to exempt the Subject Property from the City's zoning designations, and attempted to prove that the City's rezoning of the Subject Property in 1991 was improper.  While he was not successful in this endeavor, on August 14, 2007, the City of Clermont amended its Comprehensive Plan via Ordinance 581-M specifically to address the use of the Subject Property.  Although the Subject Property remained designated as CBD-EBD1, the City amended Appendix "C" of the Future Land Use Element, EBD1 District, to allow automotive and truck repair service on the Subject Property, provided that the Plaintiffs apply for and obtain a Conditional Use Permit.

This concession by the City was not sufficient to placate the Plaintiffs, however, and they have steadfastly refused to apply for a Conditional Use Permit.  They continue to argue that the original 1991 rezoning of the Subject Property, as well as the August 14, 2007 amendment to the Comprehensive Plan, were improper and unlawful and therefore should not apply to the Plaintiffs or the Subject Property.  They further argue that the Subject Property has always operated as an automotive repair business and was never abandoned, and therefore should be grand-fathered in as a non-conforming use.  Further, Mr. Weatherbee contends that he has refused to apply for a Conditional

Use Permit because he believes the City will make numerous demands that he renovate the Subject Property and/or add structures that he does not believe he should be required to do.[2]

On October 11, 2011 the City of Clermont issued Violation Notice # 1841 to Bee's Auto, alleging that the Plaintiffs were using the Subject Property for an unpermitted commercial use – an automotive repair business – in violation of Sections 122-242, 14-56, 122-37(c)(2), and 86-281(c)(2) of the City of Clermont's Code of Ordinances.[3]  (Doc. 27, Ex. C).  The Violation Notice directed the Plaintiffs to cease all commercial business on the Subject Property or obtain a Conditional Use Permit, and stated that failure to remedy the violation by December 5, 2011 would result in a Notice to Appear for a hearing before the Code Enforcement Board (Id.).

The Plaintiffs contend that they have never operated an automobile repair business on the Subject Property.  Rather, they have allowed some of Bee's Auto's

---

[2]Although the Plaintiffs did not apply for a Conditional Use Permit, members of the City's zoning and planning department, including James Hitt, the City's planning and zoning director, attempted to work with the Plaintiffs to review the Plaintiffs' site plans for the Subject Property, and even made preliminary recommendations that a Conditional Use Permit should be granted (once the Plaintiffs applied).  The City listed several conditions to the granting of the Conditional Use Permit, including establishing landscaping buffers and the installation of fences and a masonry wall, however, the conditions were not binding and the Plaintiffs could have sought exemption from them during the Conditional Use Permit application process.  Because the Plaintiffs never applied for a Conditional Use Permit, it is not known whether, or to what extent, any of these conditions would have been binding on the Plaintiffs.

[3]These ordinances all relate to an owner's use of his or her property for a business purpose that is not permitted under the applicable zoning codes and ordinances, that is not grandfathered in as a non-conforming use, and/or for which the owner has not obtained a Conditional Use Permit.  See Affidavit of James Hitt, Ex. G, pp. 13-16 (Doc. 54-8, pp. 13-16).

employees to work on their personal vehicles on the Subject Property, and Mr. Weatherbee has renovated one of his personal vehicles on the property.  The Plaintiffs have also continued to utilize the Subject Property for overflow parking from their existing business across the street.  In any event, the Plaintiffs have not complied with the Violation Notice as of the date of this Order.  The Parties have agreed to stay all enforcement proceedings in Violation Notice # 1841 until the present case is fully and finally resolved.[4]

## IV.   The Plaintiff's Posted Signs

On or about October 28, 2009, Mr. Weatherbee posted twelve signs on the Subject Property.  The twelve signs state Mr. Weatherbee's opinion that the City has harassed him, selectively enforced its laws against him and Bee's Auto, and precluded him from running Bee's Auto as an automobile repair shop on the Subject Property. The signs contain the following messages:

1.   "6 Ft Wall Really? Jim - Dezoned Unlawfully"

2.   "Give Me Back My Driveway"

3.   "Rooney's Right - ACLU Where Are You"

4.   "In My Opinion Wayne Saunders 'Took' My Occ. License"

---

[4]At all relevant times, the Plaintiffs have continued to operate Bee's Auto on the property owned by Mr. Weatherbee's mother, located at 899 West Montrose Street.  The automotive repair business located at 899 West Montrose Street is itself a non-conforming use that has been grand-fathered into the Comprehensive Plan because it has been in continuous operation prior to the 1991 amendments to the Plan.

5.      "Bring Back Cheatham - Where's FDLE"

6.      "Surprise, Surprise, Surprise Even Mayberry Had a Garage - They Are OK With Adult Entertainment But Not With Automotive Uses?"

7.      "Intimidation/Harassment - Selective Law Enforcement - False Arrests - False Documents - What's Next?  At Least They Haven't Taken My Freedom Of Speech YET!"

8.      "It's Been a Garage Since 1940 - Ask the City Manger What Happened?  What's the Big Deal?  Can He Make It Reappear as Fast as It Disappeared?"

9.      "Shame on You 'Dan' - You Shouldn't Listen to 'Him' - Why Do You Think Guthery Quit?  And Randy Story with a 18 Month Resignation"

10.     "Will the Real Chief of Police 'Please' Stand Up - Not the Guy on the 3rd Floor"

11.     "The City Manager Has This All Messed UP - I Don't Care Who He Is - I'll Deal with the Mayor From Now On!"

12.     "27 Years in the Automotive Business and the City is Trying to Turn Me Into a Sign Painter"

On or about December 22, 2009, the City issued a citation to Bee's Auto stating

that the signs were in violation of City of Clermont Ordinances Sections 102-6, 102-7,

and 102-18.[5]  The City charged the Plaintiffs with erecting signs without first obtaining

---

[5]Section 102-6 requires permits for signs displayed in the City and provides the process for applying for such permits.  Section 102-7 lists various categories of signs that are exempt from the permitting process, and provides the parameters for the exemptions (for example how many (continued...)

a permit, and claimed that the signs were not temporary political signs exempt from the permitting process.

The Plaintiffs filed suit in this Court, Case No. 5:10-cv-44-Oc-34GRJ, alleging that the signs were protected political speech, and that the citation and the City's Ordinances violated the Plaintiffs' First Amendment right to free speech.[6] The City and the Plaintiffs settled that case and entered into a Stipulated Settlement and Judgment on August 11, 2010 (Doc. 34, Case No. 5:10-cv-44).  The stipulated settlement permanently enjoined the City from:  (1) enforcing Sections 102-6, 102-7, and 102-18 of Chapter 102 of the City of Clermont, Florida Code of Ordinances against the Plaintiffs; (2) compelling the Plaintiffs to obtain permits for, or to remove the twelve signs posted on the Subject Property, and (3) enforcing or imposing fines that had previously been levied against the Plaintiffs for violating these Ordinances. Significantly, the stipulated settlement also provided that "[n]othing herein shall prohibit the City of Clermont from acting to enforce any amended or new code provision adopted after the date of the filing of Plaintiff's Complaint."  Id.  The stipulated settlement was executed by the City, Mr. Weatherbee, and Bee's Auto, and was

---

[5](...continued)
of each type of sign can be exempt on a single parcel of property, the dimensions of each sign, etc.).  Section 102-18 defines "temporary political signs" which are exempt from the permitting process, lists the size and manner by which the signs can be placed, and limits the placement of political signs to the time periods immediately before and after an election.

[6]While not specifically requested by any Party, it is clear that the Parties wish this Court to take judicial notice of Case No. 5:10-cv-44-Oc-34GRJ, and in particular the stipulated settlement. The Court will do so.

approved by the Hon. Marcia Morales Howard, United States District Judge. Id. The stipulated settlement does not mention or reference any zoning ordinances, nor does it mention Conditional Use Permits.

The signs have remained on the Subject Property without change. On or about April 26, 2011, the City adopted Ordinance No. 2011-02-C, which amended Sections 102-2, 102-7, 102-8, and 102-18. Section 102-2 defines signs, banners, billboards, and the like, and was amended to add the following definition of "non-commercial" sign:

> Non-Commercial sign means a sign which contains a message but not associated with the products, activity or services available on premises where the sign is located. This includes religious messages, political messages, or other expressions of personal views, but does not include political signs as defined below.

Affidavit of James Hitt, Ex. G, p. 3 (Doc. 54-8, p. 3).[7]

Section 102-7 lists the various types of signs that are exempt from the City's permitting process. The Section was amended to exempt "Non-Commercial Signs" (other than Political Signs as defined in Sections 102-2 and 102-18) with the following limitations:

(a)   Maximum one sign for each street frontage

(b)   Maximum sign area shall be 32 square feet, except in residential districts where signs shall not exceed six square feet

---

[7]Section 102-2 defines "political signs" as "a sign or poster advertising either a candidate for public office or a political cause subject to election." See Affidavit of James Hitt, Ex. G, p. 3 (Doc. 54-8, p. 3). This definition has remained the same and was not amended in April 2011.

(c)     Signs shall require a minimum setback of five feet from a front property line and 25 feet from any side property line

(d)     Signs shall be a maximum of eight feet in height

(e)     Signs shall not be illuminated in residential zones

(f)     Political messages on any permanent sign authorized by other provisions of this Code shall not be restricted or affected by this subsection.

Id. at p. 6, Section 102-7(18) (Doc. 54-8, p. 6).

Section 102-18, which defines "political signs" was amended to provide as follows: (1) such signs shall not exceed 32 square feet (six square feet in residential zoning districts); (2) political signs may be erected prior to an election to which the sign pertains and shall be removed within seven days after the election; (3) political signs may be placed on private property only with the consent of the property owner, and any political signs placed within the public-right-of-way or on public property are prohibited and shall be removed by the City without notice; and (4) political signs shall be constructed and placed in a manner that will not harm any person that approaches or touches the sign.   Id. at p. 10 (Doc. 54-8, p. 10).   The amendment removed any definition of "temporary political signs," and also removed various set back requirements as well as the requirement that the property owner obtain location approval for the sign.[8]   Unlike non-commercial signs, there is no limitation on the

_____

[8]The amendment to Section 102-8, which lists prohibited signs, is not relevant to this case.

-14-

number of political signs a property owner can erect on his or her own property without first obtaining a permit.

On October 5, 2011, the City issued Violation Notice # 1842 to Bee's Auto, alleging that the twelve signs on the Subject Property violated Ordinance Sections 102-6 and 102-7(18) (Doc. 27, Ex. D).  The City is now treating the Plaintiffs' signs on the Subject Property as "non-commercial signs" which it claims violate the limitations set forth in Section 102-7(18), and for which the Plaintiffs have not obtained permits.  The Violation Notice directed the Plaintiffs to either obtain permits, or remove or reconfigure the signs to comply with the Ordinances, and stated that failure to remedy the violation by December 5, 2011 would result in a Notice to Appear for a hearing before the Code Enforcement Board (Id.).

The Plaintiffs have refused to comply with the Violation Notice.  The Parties have agreed to stay all enforcement proceedings in Violation Notice # 1842 until the present case is fully and finally resolved.

## Summary Judgment Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In applying this standard, the Court must examine the materials on file and the record evidence "in the light most favorable to the nonmoving party."  Samples on Behalf of Samples v. Atlanta,

846 F.2d 1328, 1330 (11th Cir. 1988).  When faced with a "properly supported motion for summary judgment [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations."  Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).  The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

At the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986).  Some degree of factual dispute is expected, but to successfully counter a motion for summary judgment the factual dispute must "affect the outcome of the suit" and must be "such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248, 106 S. Ct. at 2510.

At the pretrial conference held on February 20, 2013, the Parties agreed that with the exception of the issue of damages on the Fifth Amendment takings claim, all of the Plaintiffs' claims are either equitable in nature or involve issues of law that are to be resolved by the Court as the ultimate trier of fact.  In such circumstances, it is the law of the Circuit that:

> If decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of

material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved.   Under those circumstances, which may be rare, the judge who is also the trier of fact may be warranted in concluding that there was or was not negligence, or that someone acted reasonably or unreasonably, . . . even if that conclusion is deemed "factual" or involves a "mixed question of fact and law."  A trial on the merits would reveal no additional data.  Hearing and viewing the witnesses subject to cross-examination would not aid the determination if there are neither issues of credibility nor controversies with respect to the substance of the proposed testimony.  The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial.

Nunez v. Superior Oil Co., 572 F.2d 1119, 1123-24 (5th Cir. 1978).[9]

## **Discussion**

The Plaintiffs filed their original complaint in the Fifth Judicial Circuit in and for Lake County, Florida on May 23, 2011, alleging claims relating to the Conditional Use Permit and zoning issues (Docs. 1-2).  The City of Clermont removed the case to this Court on September 8, 2011.  (Doc. 1); See 28 U.S.C. § 1331.  The Plaintiffs subsequently amended their complaint, after receiving the two Violation Notices, to assert six claims against the City:  (1) a state law claim for equitable estoppel; (2) an inverse condemnation/unlawful takings claim under the Fifth Amendment; (3) a constitutional claim under 42 U.S.C. § 1983 for violation of procedural due process rights; (4) a constitutional claim under § 1983 for violation of substantive due process rights; (5) a claim for declaratory and injunctive relief to prohibit enforcement of

---

[9]Fifth Circuit decisions rendered prior to September 30, 1981 are binding precedent on this Court.  Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1982).

Violation Notice # 1841; and (6) a First Amendment claim for declaratory and injunctive relief to prohibit enforcement of Violation Notice # 1842 (Doc. 27).   The City seeks summary judgment on all six claims.

## I.    The Equitable Estoppel Claim (Count I)

In their first claim for relief, the Plaintiffs argue that they purchased the Subject Property and incurred various expenses to develop the property in good faith reliance "upon the continued and historic use of the subject property, and that [the City's] Comprehensive Plan would not be amended without proper procedures." (Doc. 27, ¶45).   The Plaintiffs request the Court:  (1) declare that they have a common law, vested right to use the Subject Property as an automotive service and storage center; and (2) enjoin the City of Clermont from enforcing the Comprehensive Plan as amended.  Id. at p. 13.

In Florida, the elements of a claim for equitable estoppel against a governmental entity are: (1) a property owner's good faith reliance; (2) on some act or omission of the government; and (3) a substantial change in position or the incurring of excessive obligations and expenses so that it would be highly inequitable and unjust to destroy the right he acquired. Hollywood Beach Hotel Co. v. City of Hollywood, 329 So. 2d 10, 15-16 (Fla. 1976).  See also Coral Springs Street Systems, Inc. v. City of Sunrise, 371 F.3d 1320, 1334 (11th Cir. 2004).  The doctrine of equitable estoppel "may only be

applied against a governmental entity under exceptional circumstances." <u>Monroe County v. Hemisphere Equity Realty, Inc.</u>, 634 So. 2d 745, 747 (Fla. 3d DCA 1994).

Applying this law to the undisputed facts of this case, the Court finds that the City is entitled to summary judgment.  There is no evidence in the record establishing – or even suggesting – that the Plaintiffs relied on any act or omission on the part of the City of Clermont when it purchased or developed the Subject Property.  To the contrary, the evidence is undisputed that the Comprehensive Plan was amended in 1991 – nearly 15 years before the Plaintiffs acquired the Subject Property – to remove the permitted use of operating an automotive repair business on the property.  The fact that the Plaintiffs were not aware of this amendment (a fact which itself is called into question given Mr. Weatherbee's testimony that he was aware of "rumors" that the Comprehensive Plan had been amended) can only be attributed to the Plaintiffs' own lack of due diligence prior to purchasing the Property – it cannot qualify as good faith reliance.[10]  <u>Cf.</u> <u>Gusow v. State</u>, 6 So.3d 699, 705 (Fla. 4th DCA 2009) ("Ignorance of the law is no excuse.  Although no one can know all the law, all persons are charged with constructive knowledge of the law.").

The evidence is also incontrovertible – contrary to the Plaintiffs' assertions – that the Subject Property was <u>not</u> in continuous use as an automotive repair business

---

[10]Indeed, Mr. Weatherbee admitted at his deposition that he did not conduct any investigation concerning the zoning of the Subject Property prior to purchasing it from Mr. Neimeyer.

through the date the Plaintiffs purchased the property.  Rather, it is clear that the Subject Property had been abandoned and had not been used as an automotive repair business for nearly three (3) years, thereby losing its "non-conforming use" status well before the date the Plaintiffs purchased the property.  And while the Plaintiffs contend that the 1991 amendment to the Comprehensive Plan was not enacted according to law, they have not come forward with any evidence or made any legal argument showing or suggesting any procedural or substantive defect.

In other words, all of the acts or omissions that could be attributed to the City of Clermont – the 1991 amendment to the Comprehensive Plan, and the loss of the Subject Property's "non-conforming use" status – all occurred well before the date the Plaintiffs purchased the property, and there is no evidence that these acts or omissions were directed at the Plaintiffs in any way.  And to the extent the Plaintiffs seek to rely on the 2007 amendment to the Comprehensive Plan, such reliance is also unavailing.  The 2007 amendment, which was made at the Plaintiffs' request specifically to allow them to operate their business on the Subject Property, was enacted in accordance with the 1991 amendment – the Subject Property had lost its non-conforming use status and was no longer grandfathered in, but the Plaintiffs could have operated their automotive repair business once they applied for and obtained a Conditional Use Permit.  Moreover, the Plaintiffs have not come forward with any evidence or persuasive argument that the 2007 amendment was improper or illegal.  Thus, there

were no acts or omissions upon which the Plaintiffs relied, or could have relied upon, in good faith.[11]

Summary judgment will be Granted in favor of the City of Clermont as to the equitable estoppel claim.

## II.    The Inverse Condemnation/Takings Clause Claim (Count II)

The Plaintiffs have next alleged an inverse condemnation/takings clause claim under Article X of the Florida Constitution and the Fifth Amendment to the United States Constitution.  Specifically, the Plaintiffs contend that the City's application of the 1991 amendment to the Comprehensive Plan to the Subject Property – *i.e.*, the rezoning of the property to prohibit automotive repair businesses – has deprived the Plaintiffs "of or substantially all economic, beneficial use of the subject property, and/or unreasonably interfere[d] with its reasonable, investment-backed expectations for continued use and development of the subject property amount[ing] to a 'de facto' or

_____

[11]Mr. Weatherbee testified that part of the reason why he decided to purchase the Subject Property was due to rumors that the City's police department wanted to purchase his mother's property. However, it is undisputed that any discussions between Mr. Weatherbee's mother and the police department occurred many years before the Plaintiffs purchased the Subject Property and did not progress beyond initial expressions of general interest. Moreover, these "rumors" do not constitute a governmental act or omission that the Plaintiffs could rely upon in good faith to establish a claim for equitable estoppel.

Mr. Weatherbee further testified that he believed the City should have informed him of the 1991 amendment to the Comprehensive Plan at the time the amendment was enacted. At the time of the amendment, however, Mr. Weatherbee did not own the Subject Property and did not own any property in Clermont. The Plaintiffs have not put forth any argument or submitted any evidence as to why, under these facts, the City would have been obligated to notify the Plaintiffs about the 1991 amendment – and the Court cannot conceive of any legal or factual basis for such an obligation.

'regulatory' taking of the subject property." (Doc. 27, pp. 13-14).  The Plaintiffs are not challenging the constitutionality of the 1991 amendment, they are only seeking monetary damages.

The Fifth Amendment prevents the taking of private property for public use without just compensation and applies to the states through the Fourteenth Amendment.  See Palazzolo v. Rhode Island, 533 U.S. 606, 617, 121 S. Ct. 2448, 2457 (2001).  Florida has its own "taking" provision in Article X, Section 6 of the Florida Constitution.  A taking may result from a "physical invasion" of the property or may follow a "regulatory imposition."  Good v. United States,189 F.3d 1355, 1360 (Fed. Cir. 1999) (citing Lucas v. South Carolina Coastal Council, 505 U.S 1003, 1014-16, 112 S. Ct. 2886, 2892-94 (1992)).  "The general rule . . . is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415, 43 S. Ct. 158, 160 (1922).

The Plaintiffs have asserted a regulatory taking – the 1991 amendment to the Comprehensive Plan which changed the permitted commercial uses of the Subject Property.  There are two types of regulatory takings.  The first is a "facial taking," which "occurs when the mere enactment of a regulation precludes all development of the property, and deprives the property owner of all reasonable economic use of the property."  Collins v. Monroe County, 999 So.2d 709, 713 (Fla. 3d DCA 2008) (citing Lucas, 505 U.S. at 1017, 112 S. Ct. at 2894).  The second is an "an-applied taking," in which "the landowner challenges the regulation in the context of a concrete controversy

specifically regarding the impact of the regulation on a particular parcel of property." Taylor v. Village of North Palm Beach, 659 So. 2d 1167, 1170-71 (Fla. 4th DCA 1995).


The Plaintiffs argue that its claim is for a "facial taking" because the 1991 amendment to the Comprehensive Plan deprived the Subject Property of all economic use. However, the City has presented unrebutted evidence that after the 1991 amendment the Subject Property could be used for other commercial purposes without first obtaining a Conditional Use Permit, and Mr. Weatherbee himself admitted that the property could be used as an office. See Deposition of James Hitt, pp. 12-13 (Doc. 54-13, pp. 12-13); Deposition of Wayne E. Weatherbee, pp. 102-03 (Doc. 54-9, pp. 102-03). The City also submitted evidence that a Conditional Use Permit was successfully processed in 2002 for a retail business on the Subject Property. See Deposition of Charles Neimeyer, p. 14-21 (Doc. 54-12, pp. 14-21). Thus, the Subject Property was not deprived of all commercial uses, and it is undisputed that the Plaintiffs could have applied for a Conditional Use Permit and/or obtained variances such that the 1991 amendment did not deny the Plaintiffs of all economically viable uses, and therefore there was no facial taking. See Shands v. City of Marathon, 999 So 2d 718, 723 (Fla. 3d DCA 2008).

Instead, the Plaintiffs are challenging the impact of the 1991 amendment to the Comprehensive Plan on the Subject Property: an "as-applied" taking. "Any analysis in an as-applied regulatory taking claim must start with the threshold question of ripeness.

. . ." <u>Riviera Beach v. Shillingburg</u>, 659 So.2d 1174, 1189 (Fla. 4th DCA 1995). Ordinarily, a claim will not be ripe unless the claimant has made at least one "meaningful application." <u>McDonald, Sommer & Frates v. Yolo County</u>, 477 U.S. 340, 352-53 & n. 8, 106 S. Ct. 2561, 2567-68 & n. 8 (1986).  The landowner must take "reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering the development plans for the property, including the opportunity to grant any variances or waivers allowed by law." <u>Palazzolo</u>, 533 U.S. at 620-21, 121 S. Ct. at 2459.

In this case, the Plaintiffs have repeatedly refused to apply for a Conditional Use Permit.  As such, the Plaintiffs have not made at least one "meaningful application" to the City of Clermont to use the Subject Property as an automotive repair business.  The City has made it clear that it is willing to work with the Plaintiffs to obtain the Conditional Use Permit, however, the Plaintiffs have consistently rejected this offer.  In such circumstances, the takings claim is not yet ripe, and the Court is without jurisdiction to entertain it. <u>See</u> <u>Palm Beach Polo, Inc. v. Villages of Wellington</u>, 918 So.2d 988, 994, 997 (Fla. 4th DCA 2006) (affirming that a takings claim was not ripe for adjudication, given the landowner's failure to present a meaningful application for amendment of the comprehensive plan); <u>Hillcrest Property, LLP v. Pasco County</u>, 731 F. Supp. 2d 1288, 1295 (M.D. Fla. 2010) ("[I]f the ordinance is alleged to be unconstitutional only as applied to a particular property, the landowner must apply for a variance or exception before the party can seek judicial review.") (quoting <u>Central Fla. Inv., Inc. v. Orange</u>

County Code Enforcement Bd., 790 So.2d 593, 597 (Fla. 5th DCA 2001)).  See also

Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186, 105

S. Ct. 3108, 3116 (1985) ("As the Court has made clear in several recent decisions, a

claim that the application of government regulations effects a taking of a property

interest is not ripe until the government entity charged with implementing the

regulations has reached a final decision regarding the application of the regulations to

the property at issue."); Eide v. Sarasota County, 908 F.2d 716, 720-21 (11th Cir. 1990)

("The rationale for requiring a final decision in the due process takings area is that the

court cannot ascertain whether the regulation has gone 'too far' until it can analyze the

effect that the zoning decision has had on the value of the property.").  Additionally, "if

a State provides an adequate procedure for seeking just compensation, the property

owner cannot claim a violation of the Just Compensation Clause until it has used the

procedure and been denied just compensation.".  Williamson, 473 U.S. at 195, 105 S.

Ct. at 3121.

        The Plaintiffs argue in their response in opposition that they have not applied for

a Conditional Use Permit because they previously entered into a stipulation with the

City of Clermont in Case No. 5:10-cv-44 stating "that the Plaintiffs' application for such

a permit, or the fact of such application, was not to be used in any proceeding as

evidence that Plaintiff is required to obtain such a permit."  (Doc. 59, p. 12).  The

Plaintiffs further argue that the City "has refused to be bound by this stipulation, and as

such the Plaintiff has not applied for a permit."  Id.  Based on the record evidence

before this Court, no such stipulation exists.  As discussed above, the only stipulation entered into in Case No. 5:10-cv-44 relates solely and exclusively to the City of Clermont's sign ordinances and their application to the Plaintiffs.  There is no mention of Conditional Use Permits, or the waiver of any application procedures.

Accordingly, the Plaintiffs' claim for inverse condemnation/takings clause is not ripe for adjudication and summary judgment shall be Granted as to this claim.[12]

## III.   The Denial of Procedural Due Process Claim (Count III)

The Plaintiffs' third claim alleges under 42 U.S.C. § 1983 that the City unconstitutionally terminated their right to use the Subject Property as an automotive repair business without due process required by law – specifically without notice and the opportunity to be heard by a fair and impartial decision-maker (Doc. 27, ¶ 59).

A  § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process.  Grayden v.

---

[12]Although the Court has limited its analysis of this claim to the question of ripeness, it bears noting that to the extent that the Plaintiffs claim a regulatory taking by operation of the 1991 amendment to the City's Comprehensive Plan, they simply have no claim at all.  Assuming there was an unconstitutional taking at the time of the amendment, it was not a taking from the Plaintiffs because it occurred 15 years before the Plaintiffs had any interest in the property subject to constitutional protection.  When they acquired fee title, the taking from the prior owner had already occurred and the Plaintiffs could only acquire whatever estate their grantor owned.  Or, stated another way, the Plaintiffs, as a matter of law, could not prove any damages causally related to the earlier taking because any reduction in the fair market value of the Subject Property due to the "taking" would have been reflected in the Plaintiffs' purchase price; or, if it was not, the lack of a reduction in the Plaintiffs' purchase price would be due to the Plaintiffs' lack of bargaining skill, not the taking.

Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003).  The City argues that it is entitled to summary judgment because a constitutionally adequate process exists, and the Plaintiffs have refused to avail themselves of it.  The Court agrees.

Assuming arguendo that the Plaintiffs had a constitutionally protected interest in using their property as an automotive repair business, the Plaintiffs do not have a viable federal procedural due process claim because adequate state remedies are available to them.  McKinney v. Pate, 20 F.3d 1550, 1557, 1563 (11th Cir. 1994) (*en banc*).  It is undisputed that the Plaintiffs have a constitutionally adequate avenue through which they can be heard:  they can apply for a Conditional Use Permit, which involves hearings before both the Zoning and Planning Commission and the City Council and an appeal to the City Manager, and if they are denied a Conditional Use Permit, they can seek relief in state court.  See Fla. Stat. § 162.11; Ordinance Section 86-251; Board of County Commissioners of Brevard County v. Snyder, 627 So. 2d 469, 474 (Fla. 1993).  The Plaintiffs have steadfastly refused to use the process available to them, and while they may not like the processes available, they have not produced any evidence or legal argument demonstrating that these procedures are futile or inadequate as a matter of law.[13]  See McKinney, 20 F.3d at 1557 ("[O]nly when the

---

[13]The Plaintiffs continuously argue that the stipulated settlement in Case No. 5:10-cv-44 bars the City from ever demanding that the Plaintiffs obtain a Conditional Use Permit.  In other words, the Plaintiffs rely on the stipulated settlement as "proof" that they are not required to apply for or obtain a Conditional Use Permit (and one can assume that this would mean that the procedures available are futile and/or inadequate).  The Court has reviewed the stipulated

(continued...)

state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise."). <u>See</u> <u>also</u> <u>Cotton v. Jackson</u>, 216 F.3d 1328, 1331 (11th Cir. 2000) (if adequate state remedies are available, but a plaintiff does not avail himself of them, that plaintiff "cannot rely on that failure to claim that the state deprived him of procedural due process.").

The City's motion for summary judgment shall be Granted as to the procedural due process claim.

## IV.    The Denial of Substantive Due Process Claim (Count IV)

The Plaintiffs next allege that the 1991 amendment to the Comprehensive Plan which changed the zoning on the Subject Property, as well as the 2007 amendment which directed the Plaintiffs to obtain a Conditional Use Permit constitute "an arbitrary and capricious regulation . . . amounting to unconstitutional 'legislation'. . . ." (Doc. 27, p. 19).  The Plaintiffs further allege that this "unconstitutional legislation" constitutes a denial of their substantive due process rights and deprived the Plaintiffs of their fundamental right to use the Subject Property to operate an automotive repair business.

Where a substantive due process claim is predicated on a non-legislative deprivation of a state-granted and defined property right, there is no viable substantive

------

[13](...continued)
settlement and finds that it nowhere discusses, references, or mentions Conditional Use Permits or zoning regulations.  It is limited by its plain and clear terms to the City's sign ordinances and the extent to which the City can enforce those ordinances against the Plaintiffs.

due process claim. Greenbriar Village, L.L.C. v. Mountain Brook, City, 345 F.3d 1258, 1263 (11th Cir. 2003). "[N]on-legislative," or executive, "deprivations of state-created rights, which would include land-use rights, cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted arbitrarily and irrationally. Constitutional due process is satisfied for these deprivations when proper procedures are employed." Id. (citing McKinney, 20 F.3d at 1559).

In this case, the Plaintiffs were allegedly deprived of their property rights at some point after February 2006, when they purchased the Subject Property and attempted to use the property as an automotive repair shop. At that time, the amendments to the Comprehensive Plan had been in existence for over 15 years - the City was not engaging in any legislative activity or creating any new zoning laws. Moreover, the 2007 amendment to the Comprehensive Plan was enacted in accordance with the prior amendments, and designed to accommodate the Plaintiffs' request to operate an automotive repair business on the Subject Property. The 2007 amendment was not in the nature of a legislative act that would apply to larger segments (or all) of the public. Rather, it is clear that the City's actions with respect to the Subject Property and the Plaintiffs were administrative decisions constituting enforcement of the existing zoning regulations and the Conditional Use Permit process. In such circumstances, there is no substantive due process claim. See Lewis v. Brown, 409 F.3d 1271, 1273-74 ("[W]e have explicitly held, for the purpose of substantive due process analysis, 'that enforcement of existing zoning regulations is an executive, not legislative act. . . . Acts

of zoning enforcement rather than rulemaking are not legislative.'") (citing <u>DeKalb Stone, Inc. v. County of DeKalb, Ga.</u>, 106 F.3d 956, 959 (11th Cir. 1997)); <u>see</u> <u>also</u> <u>Crymes v. DeKalb County</u>, 923 F.2d 1482, 1485 (11th Cir. 1991) ("Acts of zoning enforcement rather than rulemaking are not legislative."). <u>Cf.</u> <u>Bass v. City of Forsyth, Ga.</u>, No. 5:06-cv-278, 2007 WL 4117778 at * 3-4 (M.D. Ga. Nov. 16, 2007) (finding city council's vote to apply zoning law was executive action because "crucial distinction" between executive and legislative acts is the impact the government act has on the public, and the act did not affect a large segment of society.).

Because the Court finds that the City's zoning acts with respect to the Plaintiffs and the Subject Property were executive, and not legislative, there can be no substantive due process claim, and the City's motion for summary judgment shall be Granted as to this claim.

## V.    The Declaratory and Injunctive Relief Claim for Conditional Use Permits (Count V)

The Plaintiffs' fifth claim is a request for a declaration that the City's Ordinances relating to non-conforming uses, Conditional Use Permits, and the current zoning of the Subject Property do not apply to the Plaintiffs.  The Plaintiffs further request that this Court enjoy the City "from compelling the Plaintiffs to obtain a site plan approval, Conditional Use Permit, or anything similar"  – in other words the Plaintiffs want to operate an automotive repair business on the Subject Property without obtaining any

approvals from the City.  (Doc. 27, p. 22).  In support of this claim, the Plaintiffs again rely on the stipulated settlement from Case No. 5:10-cv-44.  Id., ¶ 70.

As previously stated, there is nothing in the stipulated settlement of Case No. 5:10-cv-44 that relates to or impacts in any way the Plaintiffs' obligation to obtain a Conditional Use Permit, and the Court is frankly mystified as to why the Plaintiffs continue to urge this document in support of their claims in this case.  The Plaintiffs have not offered any evidence or persuasive legal argument other than their own supposition that any of these Ordinances are unconstitutional, were enacted improperly, or are being unlawfully enforced against the Plaintiffs.  Further, to the extent this claim also seeks to enjoin the City from enforcing Violation Notice # 1841 against the Plaintiffs, the Plaintiffs have not come forward with any evidence or legal authority that this Violation Notice is unconstitutional or unlawful.

Summary judgment shall be Granted in favor of the City of Clermont as to the claim for declaratory and injunctive relief.

**VI.    The First Amendment Claim (Count VI)**

The Plaintiffs' final claim asserts both a facial and as-applied challenge to the constitutionality of the City of Clermont's amended sign ordinances, Chapter 102, Sections 102-2, 102-7(18), and 102-18.  The Plaintiffs allege that the City's ordinances make impermissible content-based distinctions between signs containing political messages (which the Ordinances define as "non-commercial" signs) and signs that

advocate for or against voting for a candidate or a political issue subject to an upcoming election (which the Ordinances define as "political signs").  The Ordinances allow property owners to erect political signs advocating for or against a candidate or cause up for election without first obtaining a permit, and without any limitation on the number of signs on a particular parcel of property.  However, a property owner may only place one non-commercial sign that contains a political message on his property without obtaining a permit.  A property owner desiring to place more than one non-commercial sign on his property must apply for a permit and pay a fee.

The City of Clermont seeks summary judgment on this claim, arguing in summary fashion that the Ordinances as amended comply with the law of this Circuit as established in Café Erotica of Florida, Inc. v. St. Johns County, 360 F.3d 1274 (11th Cir. 2004) and Complete Angler, LLC v. City of Clearwater, Florida, 607 F. Supp. 2d 1326 (M.D. Fla. 2009).  The Plaintiffs also have not submitted any evidence as to this claim.

Without any evidence or detailed argument on this issue, the Court is unable to say at this stage whether the City's amended sign Ordinances run afoul of the First Amendment.  On their face, they appear to make distinctions between two forms of political speech both with respect to the number of signs that may be posted, and whether permits are required.  This Circuit has held that such content based distinctions are constitutional only if the distinctions pass strict scrutiny review.  See Café Erotica, 360 F.3d at 1290-91 (differences in size requirements for political signs

and commercial signs which are necessarily based on the content of the signs must satisfy strict scrutiny review).  See also Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250 (11th Cir. 2005) (sign ordinances that exempt certain signs from permitting requirements based on the content of the signs must satisfy strict scrutiny review). Neither the City of Clermont nor the Plaintiffs have made any argument concerning strict scrutiny review.  Given this incomplete record, the Court cannot grant summary judgment at this time, even though this is a claim that primarily involves questions of law that will ultimately be decided by the Court as the trier of fact.

### Conclusion

Accordingly, upon due consideration, it is hereby ORDERED that the Defendant City of Clermont's Motion for Summary Judgment (Doc. 53) is GRANTED IN PART. Summary Judgment is GRANTED in favor of the City of Clermont and against the Plaintiffs as to Count I (equitable estoppel); Count II (inverse condemnation/takings); Count III (denial of procedural due process); Count IV (denial of substantive due process); and Count V (declaratory and injunctive relief to prevent enforcement of Violation Notice # 1841).  The Court will RESERVE RULING on the motion for summary judgment as to Count VI (declaratory and injunctive relief to prevent infringement of First Amendment rights).  The Clerk is directed to withhold the entry of judgment on Counts I-V pending resolution of the remaining claim.

The Court is aware that the Hon. Karla R. Spaulding has entered an order (Doc. 77) setting a hearing for Friday, March 1, 2013 for the purpose of establishing a schedule for a settlement conference in this case.  If the case is not fully and completely resolved as a result of the settlement efforts of Judge Spaulding, she is requested to direct the Parties within a stated time to file supplemental briefs and evidentiary materials addressing the motion for summary judgment as to Count VI of the Plaintiffs' Amended Complaint (the First Amendment claim).  The Court will then revisit that motion.  In the meantime, the case is removed from the trial calendar commencing April 1, 2013 pending further order of the Court.

The Defendant's request for attorney's fees for filing their reply brief (Doc. 67) is DENIED.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 28th day of February, 2013.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Maurya McSheehy

-34-