UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

BEE'S AUTO, INC., a Florida corporation,
and WAYNE WEATHERBEE,

                Plaintiff,

-vs-                               Case No.  5:11-cv-525-Oc-10PRL

CITY OF CLERMONT,

                Defendant.

_____/

## O R D E R

Plaintiffs Bee's Auto, Inc., ("Bee's Auto") and Wayne Weatherbee have been embroiled in litigation with the City of Clermont (the "City") for several years, involving two separate civil actions in this District.[1]  Both cases arose when the City of Clermont informed the Plaintiffs that they could not operate an automobile repair shop and storage facility on a parcel of property the Plaintiffs purchased in Clermont without first applying for and obtaining a Conditional Use Permit under the City's zoning ordinances. The Plaintiffs refused to apply for the permit, and instead posted numerous signs on the property complaining about the City.  This resulted in the City issuing several violation notices to the Plaintiffs under the City's sign ordinance.

The present litigation began on May 23, 2011, when the Plaintiffs filed suit against the City in state court.  The City then removed the case to this Court on

_____

[1]See also Case No. 5:10-cv-44-Oc-GRJ.

September 8, 2011 (Doc. 1).   The Plaintiffs ultimately filed a six-count amended complaint against the City alleging constitutional claims under 42 U.S.C. § 1983 for purported violations of the Plaintiffs' procedural and substantive due process rights, violations of their First Amendment right to free speech, an inverse condemnation/unlawful takings claim under the Fifth Amendment, and a state law claim for equitable estoppel (Doc. 27).

The City moved for summary judgment on all claims (Doc. 53), and the Plaintiffs filed a response in opposition (Doc. 59).   On February 28, 2013, the Court granted summary judgment in favor of the City on all but one of the Plaintiffs' claims for relief – the claim for declaratory and injunctive relief alleging violations of the Plaintiffs' First Amendment right to free speech (Doc. 78).   The Court referred this remaining claim to the Hon. Karla R. Spaulding, Magistrate Judge, to conduct a settlement conference (Id.).   However, the Parties were unable to reach settlement, and Judge Spaulding granted the Plaintiffs time to file supplemental summary judgment briefs on the First Amendment claim (Doc. 98).   Those briefs have now been filed (Docs. 99,102), and the claim is ripe for disposition.

Upon due consideration, the Court finds that the City's motion for summary judgment on the First Amendment claim is due to be denied.   The Court further finds that the City's sign Code is unconstitutional both facially and as applied to the Plaintiffs because it draws distinctions between non-commercial signs containing political messages, political signs, and other types of signs and displays based solely on their

content, and because the Code is not narrowly drawn to satisfy a compelling government interest.

## Undisputed Material Facts

The Court has previously provided an in-depth recitation of the undisputed facts, see Doc. 78, pp. 2-15.  The Court will now limit its analysis to the facts pertinent to the remaining First Amendment Claim.

## I.    The City's Sign Ordinances[2]

Chapter 102 of the City's Code of Ordinances is entitled "Signs" and it regulates all signs erected within the City.  The stated purpose and intent of Chapter 102 is "to ensure adequate means of communication through signage as stated in this chapter," and to:

> (1)    Maintain the established suburban character of the city by regulating all exterior signage in a manner which promotes low profile signage of high quality design.
>
> (2)    Protect and maintain the visual integrity of roadway corridors within the city by establishing a maximum amount of signage on any one site to reduce visual clutter.

---

[2]The Court is aware that in 2013, the City amended its sign Code to provide regulatory exemptions for awning signs and to further specify the types of flags that a person may fly without a permit.  These amendments are not relevant to the facts and issues in this action.  All provisions of the Code pertaining to the Plaintiffs' claims have not changed.  The Court will therefore reference the version of the Code in effect at the time the Plaintiffs filed their Complaint.  See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1310 (11th Cir. 2000).

(3)     Establish locations and setback for signage which are designed to protect motorists from visual distractions, obstructions and hazards.

(4)     Enhance the appearance of the physical environment by requiring that signage be designed as an integral architectural feature of the site and structure which such signage is intended to identify, and sited in a manner which is sensitive to the existing natural environment.

(5)     Provide for signage which satisfies the needs of the local business community for visibility, identification and communication.

(6)     Establish procedures for the removal or replacement of nonconforming signs, enforcement of these regulations, maintenance of existing signs, and consideration of variances and appeals.

Code § 102-1.

Section 102-2 of the Code broadly defines signs as

[A]ny advertising display in the form of any letters, figure character, mark, plane, point, marquee, design, poster, picture, stroke, stripe, line, trademark, reading matter or device, or any combination of these, placed, attached, painted, erected, fastened or manufactured in any manner whatsoever so that the display is designed or used for the information of persons or the attraction of persons to any place, subject, person, firm, corporation, public performance or merchandise whatsoever, and which is displayed in any manner out-of-doors.

The Code regulates signs in several ways.  First, unless a sign falls into one of the "exempt" categories, a person wishing to erect, display, alter, change, or relocate a sign must first obtain a permit from the City and pay a fee.  <u>See</u> Code § 102-6.

-4-

Second, once a person obtains a sign permit, the Code imposes height and setback requirements (Code § 102-12), construction and maintenance standards (Code § 102-10), and places limitations on the total area and number of signs that may exist on a parcel of land (Code §§ 102-13, 102-14).

The City's Code expressly exempts from the permitting requirements certain enumerated categories of signs.  Section 102-7 provides that "[t]he following types of signs are exempt from the permit requirements of this chapter, provided they are not placed or constructed so as to create a hazard of any kind. . . ."

(1)     One sign per street frontage, not exceeding four square feet in total area for residential zones and not exceeding 32 square feet in total area for commercial and industrial zones, offering the specific property for sale, rent or lease by the owner or his agent, provided the sign is located on the property offered.

(2)     One marquee sign over a show window or door of a store or business establishment announcing only the name of the proprietor and the nature of the business, not exceeding four square feet in area.

(3)     One sign painted on the door or show window limited to the name of the proprietor, name or nature of the business, hours of operation and emergency telephone numbers, when all letters and characters are no more than six inches in height.

(4)     One ground sign not exceeding two square feet in area and bearing only property numbers, post office box numbers, names of occupants of premises, or other identification of the premises, not having commercial connotations.

(5)    Directory signs for businesses, limited to two square feet per occupant, affixed to a wall or ground sign.

(6)    Private ground directional or instructional signs that direct and guide traffic, parking or pedestrian movements on private property provided the individual letters composing such a sign do not exceed six inches in height. Signs may be illuminated and display the name, logos, symbols or designs of the establishment; however, such signs shall not exceed four feet in height and shall not exceed four square feet in area.

(7)    Memorial signs or tablets, containing names of buildings and date of erection, when cut into any masonry surface or when constructed of bronze or other noncombustible materials and attached to the surface of a building.

(8)    Legal notices and official instruments.

(9)    Signs necessary to promote health, safety and general welfare, and other regulatory, statutory, traffic control or directional signs erected on public property as required by governmental entities with permission as appropriate from the City, the County, the State or the United States federal government.

(10)   Paper signs displayed inside show windows of retail establishments so long as no part of the display moves or contains flashing lights and the display does not exceed 25 percent of the window area.

(11)   Bulletin boards and identification signs for public, nonprofit or religious facilities, located on the premises and not exceeding 24 square feet in area.

-6-

(12)   Those banner signs permitted in section 102-8.[3]

(13)   Menus of less than two square feet mounted at the entrances to restaurants.

(14)   The flying of three or less ground-mounted freestanding national, state or city flags; provided that such flags shall not be used in such a manner as to attract attention for commercial purposes.

(15)   Decorative flags and bunting for a celebration, convention or commemoration of significance to the entire community when authorized by the City Council for a prescribed period of time.

(16)   Holiday lights and seasonal decorations displayed at times when such lights and decorations are generally considered appropriate.

(17)   Sandwich type board signs may be utilized in the CBD zoning district, provided the following is adhered to:

a.   One per business and relating directly to that business.

b.   Maximum three feet wide and four feet high.

c.   Maximum two sides (back-to-back).

d.   No sign may block the sidewalk access, in accordance with ADA requirements, by maintaining at least a four-foot wide passage from one property to another using the sidewalk.

---

[3]Section 102-8 defines prohibited signs and provides various exceptions. The only provision relevant to this case is § 102-8(23) which prohibits "[a]ny other signs that are not specifically permitted or exempted by this chapter."

e.    Sign may not be electrical and must adhere to requirements listed in Section 102-8, prohibited signs; exceptions, unless otherwise indicated herein.

f.    Sign placement and use may only occur during open business hours.

g.    Sign shall not be permitted within the four-foot area from the inside of the curb toward the business front.

(18)   Non-commercial signs (other than Political Signs as defined above and as regulated by Section 102-8) provided the following shall apply:

a.    Maximum one sign for each street frontage.

b.    Maximum sign area shall be 32 square feet, except in residential districts where signs shall not exceed six square feet.

c.    Signs shall require a minimum setback of five feet from a front property line and 25 feet from any side property line.

d.    Signs shall be a maximum of eight feet in height.

e.    Signs shall not be illuminated in residential zones.

f.    Political messages on any permanent sign authorized by other provisions of this Code shall not be restricted or affected by this subjection.

"Non-commercial signs" are defined in Section 102-2 of the Code as "a sign

which contains a message not associated with the products, activity or services

available on premises where the sign is located.  This includes religious messages, political messages or other expressions of personal views, but does not include political signs as defined below."  That same section also defines "political signs" as "a sign or poster advertising either a candidate for public office or a political cause subject to election."  Code § 102-2.  Political signs are not exempt from the permitting process,[4] and have the following additional restrictions:  (1) they may not exceed 32 square feet of advertising display area (six square feet in residential zoning districts); (2) they may be erected prior to the election to which the signs pertain and shall be removed within seven days after the election (if the signs are not removed, the City will remove them at the expense of the candidate); (3) private property owners must give their consent to the placement of political signs, and political signs may not be placed in public-right-of-ways; and (4) the signs must be constructed and placed in a manner that will not harm any person who approaches or touches the sigh.  Code § 102-18.

The Code contains a severability provision which states that "if any section, subsection, sentence, clause, phrase, or portion of this Ordinance is for any reason held invalid or unconstitutional by a court of competent jurisdiction, such portion shall

_____

[4]The Plaintiffs allege that "political signs" are exempt from the Code's permitting process. Doc. 27, ¶ 87.  The Court has reviewed the Code and has not located ay such exemption for political signs.  Rather, the Code is clear that the only signs that are exempt from the permitting process are those enumerated in Section 102-7. Political signs are expressly excepted from that section.  See Code § 102-7(18).

be deemed a separate, distinct and independent provision, and such holding shall not affect the validity of the remaining portions hereof."  (Doc. 102-1, p. 10, Section 2).

II.   **The Plaintiff's Property and Posted Signs**

Bee's Auto is a Florida corporation operating since 1982 as an automotive repair business located at 899 West Montrose Street, Clermont, Florida 34711.  The property located at 899 West Montrose Street is owned by Margaret Ann Weatherbee, the mother of Plaintiff Wayne Weatherbee.  Mr. Weatherbee is the owner and president of Bee's Auto.

The parcel of property at issue (the "Subject Property") is located at 898 West Montrose Avenue, Clermont, Florida, diagonally across the street from Bee's Auto's current business address.  On February 28, 2006, the Plaintiffs purchased the Subject Property from A&S Automotive, Inc. for $250,000.  The Plaintiffs intended to move Bee's Auto's automotive repair business onto the property.  The Subject Property is within the jurisdiction of the City of Clermont, and is subject to the City's regulations, ordinances, Comprehensive Plan, and land development code.  The Subject Property contains a building that is approximately 1,118 square feet in dimension, including two enclosed bays, an office, two bathrooms, and an open canopy structure.

On or about October 28, 2009, Mr. Weatherbee posted twelve signs on the Subject Property.  The signs state Mr. Weatherbee's opinion that the City has harassed him, selectively enforced its laws against him and Bee's Auto, and precluded him from

running Bee's Auto as an automobile repair shop on the Subject Property.  The signs

contain the following messages:

1.   "6 Ft Wall Really? Jim - Dezoned Unlawfully"

2.   "Give Me Back My Driveway"

3.   "Rooney's Right - ACLU Where Are You"

4.   "In My Opinion Wayne Saunders 'Took' My Occ. License"

5.   "Bring Back Cheatham - Where's FDLE"

6.   "Surprise, Surprise, Surprise Even Mayberry Had a Garage - They Are OK With Adult Entertainment But Not With Automotive Uses?"

7.   "Intimidation/Harassment - Selective Law Enforcement - False Arrests - False Documents - What's Next?  At Least They Haven't Taken My Freedom Of Speech YET!"

8.   "It's Been a Garage Since 1940 - Ask the City Manger What Happened?  What's the Big Deal?  Can He Make It Reappear as Fast as It Disappeared?"

9.   "Shame on You 'Dan' - You Shouldn't Listen to 'Him' - Why Do You Think Guthery Quit?  And Randy Story with a 18 Month Resignation"

10.   "Will the Real Chief of Police 'Please' Stand Up - Not the Guy on the 3rd Floor"

11.   "The City Manager Has This All Messed UP - I Don't Care Who He Is - I'll Deal with the Mayor From Now On!"

12.   "27 Years in the Automotive Business and the City is Trying to Turn Me Into a Sign Painter"

On or about December 22, 2009, the City issued a Violation Notice to the Plaintiffs stating that the signs were in violation of Code Sections 102-6 (which provided the requirements for obtaining a sign permit), 102-7 (which listed categories of exempt signs), and 102-18 (which at the time defined "temporary political signs" that were exempt from permitting).  The City charged the Plaintiffs with erecting signs without first obtaining a permit, and charged that the signs were not exempt temporary political signs.  The Plaintiffs refused to remove the signs or obtain a permit, and the City's Code Enforcement Board held a hearing and ultimately levied a fine of $75/day against the Plaintiffs until they removed the signs or obtained permits for them.

The Plaintiffs filed suit in this Court, Case No. 5:10-cv-44-Oc-34GRJ, alleging that the signs were protected political speech, and that the citation, the fines, and the City's signage Code violated the Plaintiffs' First Amendment right to free speech.[5]  The City and the Plaintiffs settled that case and entered into a Stipulated Settlement and Judgment on August 11, 2010 (Doc. 34, Case No. 5:10-cv-44).  The stipulated settlement permanently enjoined the City from:  (1) enforcing Sections 102-6, 102-7, and 102-18 of Chapter 102 of the City of Clermont, Florida Code of Ordinances against the Plaintiffs; (2) compelling the Plaintiffs to obtain permits for, or to remove the twelve signs posted on the Subject Property; and (3) enforcing or imposing fines that had

---

[5]While not specifically requested by any Party, it is clear that the Parties wish this Court to take judicial notice of Case No. 5:10-cv-44-Oc-34GRJ, and in particular the stipulated settlement. The Court will do so.

previously been levied against the Plaintiffs for violating these Code provisions. Significantly, the stipulated settlement also provided that "[n]othing herein shall prohibit the City of Clermont from acting to enforce any amended or new code provision adopted after the date of the filing of Plaintiff's Complaint." Id.  The stipulated settlement was executed by the City, Mr. Weatherbee, and Bee's Auto, and was approved by my colleague, the Hon. Marcia Morales Howard, United States District Judge. Id.

## III.    **The Present Dispute**

On or about April 26, 2011, the City adopted Ordinance No. 2011-02-C, which amended Sections 102-2, 102-7, 102-8, and 102-18 of the City's signage Code. Section 102-2 was amended to add the definition of "non-commercial" signs listed above.  Section 102-7, which lists the various types of signs that are exempt from the City's permitting process, was amended to include the above-described exemption for "non-commercial Signs" contained in Section102-7(18).

Section 102-18, which pertains to the limitations on the posting of "political signs" was amended to include the various restrictions also discussed supra.  In particular, the amendment removed any definition of "temporary political signs," removed various set back requirements, and removed the requirement that the property owner obtain location approval for the sign.[6]  However, unlike the Code's provisions governing non-

---

[6]The amendment to Section 102-8, which lists prohibited signs, is not relevant to this case.

commercial signs, which allow for one exempt, non-permitted sign, the Code does not exempt political signs from the permitting process.   Section 102-18 also limited the posting of political signs to an unspecified time period prior to an election and until seven days after the election.

On October 5, 2011, the City issued Violation Notice # 1842 to Bee's Auto, alleging that the 12 signs on the Subject Property violated Code Sections 102-6 and 102-7(18) as amended (Doc. 27, Ex. D).   The City is now treating the Plaintiffs' signs on the Subject Property as "non-commercial signs" and asserts that, as such, the Plaintiffs are only allowed to post one exempt sign on the Subject Property pursuant to Section 102-7(18), must obtain permits for the remaining 11 signs, and all 12 signs must adhere to the Code's size and location restrictions.  The Violation Notice directed the Plaintiffs to either obtain permits for the signs, or to remove or reconfigure the signs to comply with the Code.  The Notice further stated that failure to remedy the violation by December 5, 2011 would result in a Notice to Appear for a hearing before the Code Enforcement Board (Id.).

The Plaintiffs have refused to comply with the Violation Notice.  The Parties have agreed to stay all enforcement proceedings relating to Violation Notice # 1842 until the present case is fully and finally resolved.  As a result, the Plaintiffs have not been subjected to any penalties or fines, and the signs have remained on the Subject Property without change.

## Summary Judgment Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In applying this standard, the Court must examine the materials on file and the record evidence "in the light most favorable to the nonmoving party."  Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  When faced with a "properly supported motion for summary judgment [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations."  Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).  The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.  Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

At the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986).  Some degree of factual dispute is expected, but to successfully counter a motion for summary judgment the factual dispute must "affect the outcome of the suit" and must be "such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248, 106 S. Ct. at 2510.

## Discussion

The Plaintiffs assert both a facial and as-applied challenge to the constitutionality of the City of Clermont's sign Code, as amended in 2011.  The Plaintiffs allege that the Code's permitting and exemption provisions make impermissible content-based distinctions between non-commercial signs containing political messages, "political signs" that advocate for or against voting for a candidate or a political issue subject to an upcoming election, and other types of signs such as legal notices, signs promoting the safety and general welfare, and holiday decorations.

## I.    Standing

The City argues that the Plaintiffs have not suffered any injury in fact and therefore do not have constitutional standing to raise any First Amendment claims. And, to the extent the Plaintiffs have constitutional standing, it is limited to a challenge to the two Code sections specifically listed on the Violation Notice.

### A.    Constitutional Standing

To state a case or controversy under Article III of the Constitution, a plaintiff must establish standing.  Allen v. Wright, 468 U.S. 737, 750-51, 104 S. Ct. 3315, 3324 (1984).  The minimum constitutional requirements for standing are:

> First the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, non 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the

independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992).

With respect to the requirement of an "injury in fact," the plaintiff must "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct" of the other party. Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S. Ct. 1601, 1608 (1979). However, "because we must afford special protection for the exercise of constitutional rights, a plaintiff does not always need to risk prosecution to obtain preventative relief when his or her exercise of a constitutional right is at stake." GeorgiaCarry.Org, Inc. v. Georgia, 678 F.3d 1244, 1251 (11th Cir. 2012). "Instead, a plaintiff with the exercise of a constitutional right at stake may seek declaratory or injunctive relief prior to the challenged statute's enforcement." Id.

In this case, the City contends that the Plaintiffs' claim is premature and they have not suffered any injury in fact because the signage Code has not yet been enforced against them. Although the City issued a Violation Notice, the City has not yet called the Plaintiffs to a hearing before the Code Enforcement Board, has not yet ordered the Plaintiffs to remove their signs, has not yet denied the Plaintiffs any permits for their signs, and has not yet levied any fines or other penalties against the Plaintiffs.

The City's argument is a classic case of hoisting itself on its own petard. What the City fails to acknowledge is that the only reason the Violation Notice has not been further enforced is that the City agreed to stay all enforcement proceedings until this

-17-

Court rules on the constitutionality of the amended Code.  See Doc. 27, ¶ 32; Doc. 29, ¶ 32.  The City cannot have it both ways – it cannot agree to place the issue of the constitutionality of their Code before this Court while simultaneously arguing that the Plaintiffs have no standing to litigate this issue.  To now argue that the Plaintiffs have not yet suffered any injury simply because the City, embroiled in this litigation, has voluntarily postponed all enforcement proceedings, is disingenuous and without merit.[7]

The City's argument also fails for a more basic reason.  A plaintiff claiming a violation of the exercise of his constitutional rights need not show that he has been subject to actual prosecution or penalty in order to establish standing.  "The [injury] in this pre-enforcement context is the well-founded fear that comes with the risk of subjecting oneself to prosecution for engaging in allegedly protected activity."  GeorgiaCarry.Org, 687 F.3d at 1252 (citing Babbitt v. UFW, 442 U.S. 289, 298-99, 99 S. Ct. 2301, 2308 (1979)).  The plaintiff need only allege that:  (1) an actual threat of prosecution was made; (2) prosecution is likely; or (3) a credible threat of prosecution exists based on the circumstances.  Id.  See also Jacobs v. Florida Bar, 50 F.3d 901, 904 (11th Cir. 1995).

The Plaintiffs have alleged and demonstrated all three.  They have submitted admissible evidence that the City has issued a Violation Notice ordering them to obtain permits or to remove or reconfigure their signs, that failure to comply with the Notice

---

[7]Notably, the City does not assert that it will forego enforcement proceedings against the Plaintiffs in the event it prevails on summary judgment.

-18-

will result in a hearing before the Code Enforcement Board, and that the Board has the authority to levy fines.  In fact, the Board previously did just that, levying fines of $75/day against the Plaintiffs – for posting the same signs – until they complied with the prior version of the signage Code.  The City has not submitted any evidence suggesting that this penalty provision has been removed, or that the 2011 amendments to the Code removed the ability of the Board to levy such fines.  This is more than enough to satisfy the injury in fact requirement and to show that the Plaintiffs possess constitutional standing.  See Café Erotica of Florida v. St. Johns County, 360 F.3d 1274, 1281 (11th Cir. 2004).

**B.    The Provisions that May be Contested**

As described in the amended complaint, the Plaintiffs ask the Court to declare unconstitutional the entirety of the City's signage Code, or at a minimum, Sections 102-6, 102-7, 102-18, and the definitions of "non-commercial sign" and "political sign" contained in Section 102-2 (Doc. 27, p. 32).  The City argues that, assuming the Plaintiffs have constitutional standing, they can only challenge the two Sections of the Code listed in the October 5, 2011 Violation Notice:  Sections 102-6 and 102-7(18).  See e.g., Tanner Advertising Group, L.L.C. v. Fayette County, Ga., 451 F.3d 777, 791 (11th Cir. 2006) (finding that plaintiff lacked standing to challenge portions of a sign code regulating "attention-getting devices" where the plaintiff's proposed signs would not contain such devices); Granite State Outdoor Advertising, Inc. v. City of Clearwater,

<u>Fla.</u>, 351 F.3d 1112, 1117 (11th Cir. 2003) (billboard advertiser who was denied sign permits only had standing to challenge the constitutionality of the provisions of the sign code under which the city denied the permits).

The Court agrees that the Plaintiffs do not have standing to challenge provisions that have no applicability to them (such as the restrictions on commercial signs or banners contained in Section 102-8). <u>See</u> <u>Tanner</u>, 451 F.3d at 791.  However, the City's view of the Plaintiffs' standing is too restrictive.  While the Plaintiffs clearly have standing to challenge those provisions of the Code under which they were charged, they also have standing to challenge those portions of the Code which "provide the basic definitional structure for the terms used in [the violated sections] and which more generally define the scope of signs allowed by [the violated sections]."  <u>KH Outdoor, LLC v. City of Trussville</u>, 458 F.3d 1261, 1267 (11th Cir. 2006).  <u>See</u> <u>also</u> <u>Bonita Media Enterp., LLC v. Collier County Code Enforcement Bd.</u>, 2008 WL 432449 at * 5 (M.D. Fla. Feb. 13, 2008).  This includes the sections of the Code discussing the purpose and intent behind the Code, and the definitional section, Section 102-2.  The Court cannot assess the constitutionality of Sections 102-6 and 102-7(18) without also considering the definitions of "non-commercial" and "political signs" contained in Section 102-2, and comparing the limitations on the posting of these signs with the limitations placed on other types of exempt signs listed in section 102-7.  These sections cannot be read in isolation, and the Court finds that the Plaintiffs have standing to challenge Sections 102-2, 102-6, 102-7, and 102-18, because these are the sections that affect the

Plaintiffs' activities. <u>KH Outdoor</u>, 458 F.3d at 1267. This standing includes both facial and as-applied challenges. <u>Id.</u> at 1267-68.[8]

## II.      The Code Makes Content Based Distinctions

The Parties agree that the Plaintiffs' signs – which criticize the City's government and discuss various public issues – constitute non-commercial, political speech which is protected under the First Amendment. <u>See</u> Docs. 99, p. 6, 102, pp. 1-3. There also appears to be no dispute that the Violation Notice and the Code's regulations, including the permitting and locational requirements, are a restriction on the Plaintiffs' protected speech. The Court must therefore determine whether the Violation Notice and the Code's provisions are content based or content neutral. <u>See</u> <u>Solantic, LLC v. City of Neptune Beach</u>, 410 F.3d 1250, 1258 (11th Cir. 2005) ("In evaluating the constitutionality of an ordinance restraining or regulating speech, we first inquire whether the Ordinance is content-neutral.") (internal quotation marks omitted). If a law is content neutral, it is subject to intermediate scrutiny; however, if a law is content based, it is subject to strict scrutiny review. <u>Id.</u>; <u>DA Mortgage, Inc. v. City of Miami Beach</u>, 486 F.3d 1254, 1266 (11th Cir. 2007).

---

[8]The Court also finds that the overbreadth doctrine applies to the Plaintiffs such that they may assert facial challenges to the "political signs" restrictions contained in Section 102-18. <u>See</u> <u>KH Outdoor</u>, 458 F.3d at 1266-67; <u>Café Erotica</u>, 360 F.3d at 1281.

### III.   Oh What a Tangled Web We Create When First We Practice to Regulate[9]

"As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based." Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 643, 114 S. Ct. 2445, 2459 (1994). Following Turner, the Court concludes that the portions of the Code under review are content-based.  Section 102-7 identifies 18 types of signs that are exempt from the permit requirements, subject only to the limitations related to that type of sign.  The majority of these exempted signs are content based.

For example, a property owner can erect as many exempt business directory signs, private ground or directional signs, memorial signs or tablets, legal notices and official instruments, banners, and/or signs required by a government entity which promote the health, safety and general welfare as he or she wishes.  Public, nonprofit, or religious facilities may post an unlimited number of exempt bulletin boards and identification signs.  And property owners can fly up to 3 "national, state, or city flags" without a permit, although flags supporting a cause or event would first require a permit.  Moreover, there is no permit requirement, and no limit on the amount of holiday and seasonal  decorations that may displayed, so long as they are displayed at times that are "generally considered appropriate."  However, a property owner who wishes to erect a non-commercial sign expressing views on political issues may only post one

---

[9]Stated with an apology to Sir Walter Scott for the distortion of his verse.

such sign without obtaining a permit, and must adhere to numerous size and setback requirements.  Code § 102-7(18).  Under these provisions, a property owner can place as many signs as he wants in his front yard reading "Parking in Back," but can only post one sign containing a political message such as "Support Our Troops" subject to size, location, and setback limits.  In addition, holiday lights and decorations are allowed to be displayed freely; whereas a figure of the Mayor is not.  Such distinctions are clearly content based.  <u>Solantic</u>, 410 F.3d at 1264.

The Code also provides an extremely narrow definition of "political signs" - limiting them to signs "advertising either a candidate for public office or a political cause subject to election."  Code § 102-2.  Although there is no limit on the number of such signs that may be posted, they are <u>not</u> exempt from the permitting process, and may not be displayed for more than seven days following an election.  Code § 102-18. Thus, multiple permit-exempt "Parking in Back" signs can stay up indefinitely, but signs stating "Re-Elect Mayor Jones" must satisfy permitting requirements and must be removed within a week of the election.  In addition, a property owner is limited to only one exempt sign stating "Mayor Jones is a Horrible Official."

In sum, because some types of signs are subject to permitting, temporal, setback, and numerical limitations, while others are exempt from such regulations based on the nature of the messages they seek to convey, the Court concludes that the City's sign Code is undeniably a content-based restriction on speech.  <u>See</u> <u>Solantic</u>, 410 F.3d at 1264-66; <u>Dimmitt, III v. City of Clearwater</u>, 985 F.2d 1565, 1569 (11th Cir.

1993); The Complete Angler, LLC v. City of Clearwater, 607 F. Supp.2d 1326, 1333-34 (M.D. Fla. 2009); Bonita Media, 2008 WL 432449 at ** 6-8.  Because the City's sign Code makes such content-based distinctions, the Code must withstand strict scrutiny review to be constitutional.  See Café Erotica, 360 F.3d at 1287; The Complete Angler, 607 F. Supp.2d at 1334.  See also McIntyre v. Ohio Elections Com'n, 514 U.S. 334, 347, 115 S. Ct. 1511, 1519 (1995) ("When a law burdens core political speech, we apply 'exacting scrutiny,' and we uphold the restriction only if it is narrowly tailored to serve an overriding state interest.").[10]

## IV.  The Code Does Not Survive Strict Scrutiny

To pass strict scrutiny, content-based regulations on non-commercial speech must be narrowly tailored to serve a compelling government interest.  United States v. Playboy Entm't Group, Inc., 529 U.S. 803, 120 S. Ct. 1878 (2000); Café Erotica, 360 F.3d at 1287.   The City has the burden of proving the constitutionality of its conduct, and there is a presumption that a content-based ordinance is not constitutional. Playboy Entm't, 529 U.S. at 816-17.

---

[10]The City attempts to argue that the challenges to the Code focus primarily on permitting requirements, and exemptions thereto, and that such permitting exemptions are "far less suspect than" exemptions from a complete ban on signage. (Doc. 99, p. 10, citing Coral Springs Street Systems, Inc. v. City of Sunrise, 371 F.3d 1320, 1347 (11th Cir. 2004)).  However, in this case there are 18 categories of exemptions, and the City's Code contains an array of other restrictions that are also being challenged, including limits on the number of signs that can be displayed and their duration.  As the Eleventh Circuit stated: "The fact that these content-based provisions take the form not of regulations but of exemptions from regulations is immaterial. . . .  [W]hether these content-based restrictions are cast as regulations or exemptions is simply a matter of semantics." Solantic, 410 F.3d at 1264, n. 13.

The Court finds that the portions of the Code at issue here are not narrowly tailored to accomplish the City's asserted interests.  The City points to Section 102-1 of the Code, which, as described infra, pp. 3-4, asserts that the intent and purposes behind enacting the signage Code are to promote aesthetic, local business, and traffic safety concerns.  These purposes relate to the manner in which signs are erected, located, and removed throughout the City; they do not explain or provide any justification for distinguishing between the messages contained on the signs themselves.  Moreover, the Code only discusses these interests in the abstract; there are no findings of fact, and nowhere has the City explained how these interests are served by the Code's permitting and exemption provisions.  For example, there is no explanation as to how the posting of multiple directional or parking signs on a parcel of property is more aesthetically pleasing than posting multiple signs containing political messages.  There is also no explanation as to how holiday decorations, business directories, bulletin boards, parking signs, or memorial tablets are any less of a traffic distraction or hazard to motorists than non-commercial signs.  See Solantic 410 F.3d at 1267-68; Café Erotica, 360 F.3d at 1291.  Moreover, the Code nowhere explains how limiting non-commercial and political signs "satisfies the needs of the local business community for visibility, identification and communication."  Although the Code generally promotes aesthetics and traffic safety, the City has failed to demonstrate how these interests are served by the distinctions it has drawn in the

treatment of exempt and nonexempt categories of signs.  The Code is not narrowly tailored to accomplish any of the City's interests.

Further, even if the Code was narrowly tailored, it is the law of this Circuit that such general and abstract aesthetic, business, and traffic safety interests are <u>not</u> *per se* so compelling as to justify content-based restrictions on signs. <u>See</u>  <u>Metromedia, Inc. v. City of San Diego</u>, 453 U.S. 490, 507-08, 101 S. Ct. 2882, 2892-93 (1981); <u>Beaulieu v. City of Alabaster</u>, 454 F.3d 1291, 1233-34 (11th Cir. 2006); <u>Solantic</u>, 410 F.3d at 1267-68; <u>Dimmitt</u>, 985 F.2d at 1570; <u>The Complete Angler</u>, 607 F. Supp. 2d at 1334.  To be sure, the City has the right to generally promote aesthetics, local business, and traffic safety, and it is entirely possible that in certain circumstances such concerns could rise to the level of compelling government interests; but despite having two opportunities to do so, the City has not made any argument or proffered any evidence that would even suggest that its interests rise to that level in this case. <u>See</u> <u>Dimmitt</u>, 985 F.2d at 1570 ("As a practical matter, only the most extraordinary circumstances will justify regulation of protected expression based upon its content.").

Because the City has not shown how the distinctions it has drawn in the treatment of non-commercial signs, political signs, and other types of exempt signs promote its purported interests, the Court concludes that the signage Code is not narrowly tailored to serve a compelling government interest.  Accordingly, the provisions of the City's signage Code under consideration in this case – the definitions of "non-commercial signs" and "political signs" contained in Section 102-2, the

permitting requirements of Section 102-6 applicable to non-exempt signs, the

exemptions set forth in Section 102-7, and the restrictions on political signs contained

in Section 102-18 – have failed strict scrutiny.  The Court concludes that these sections

are unconstitutional both on their face and as applied to the Plaintiffs.  Judgment is due

to be entered on this claim in favor of the Plaintiffs.[11]

----

[11]Although the Plaintiffs have not moved for summary judgment, and have instead requested a "full adversarial hearing/trial" (Doc. 102, p. 9), the Court finds that such relief is not warranted or appropriate.  When a motion for summary judgment is presented to the Court, it opens the entire record for consideration, and the Court may enter judgment in favor of the non-moving party on any grounds apparent in the record, even where there is no formal cross-motion.  See Burton v. City of Belle Glade, 178 F.3d 1175, 1204 (11th Cir. 1999).  And, as the Parties previously agreed, the First Amendment claim is solely equitable in nature and involves issues of law that are to be resolved by the Court.  Moreover, there are no factual disputes remaining as to this claim.  In such circumstances, it is the law of the Circuit that:

> If decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved.  Under those circumstances, which may be rare, the judge who is also the trier of fact may be warranted in concluding that there was or was not negligence, or that someone acted reasonably or unreasonably, . . . even if that conclusion is deemed "factual" or involves a "mixed question of fact and law."  A trial on the merits would reveal no additional data.  Hearing and viewing the witnesses subject to cross-examination would not aid the determination if there are neither issues of credibility nor controversies with respect to the substance of the proposed testimony.  The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial.

Nunez v. Superior Oil Co., 572 F.2d 1119, 1123-24 (5th Cir. 1978).  See Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1982) (Fifth Circuit decisions rendered prior to September 30, 1981 are binding precedent on this Court).

**V.      Appropriate Relief**

Having determined that the sections of the City's Code at issue in this case are unconstitutional, the Court must next determine whether these provisions can be severed from the Code, or whether they are so intertwined that the entire Code must be stricken.

The Court notes that the signage Code contains a severability provision  (Doc. 102-1, p. 10, Section 2), and that the Plaintiffs' standing was limited to the provisions which related to the Plaintiffs' own activities.  Moreover, the Court is aware that "Florida law clearly favors (where possible) severance of the invalid portions of a law from the valid ones." Coral Springs Street Systems, Inc. v. City of Sunrise, 371 F.3d 1320, 1347 (11th Cir. 2004).  The question is whether the unconstitutional provisions of the Code can be separated from the remainder of the Code such that:   (1) the purpose expressed in the valid provisions can be accomplished independently of those which are voided; (2) the good and the bad features are not so inseparable in substance that it can be said that the City would have passed the one without the other; and (3) a complete act remains after the invalid provisions are stricken.  Id. at 1348.

Since neither side has addressed this issue, the Court will give the Parties an opportunity to brief the question of severability before rendering final judgment.

**Conclusion**

Accordingly, upon due consideration, it is hereby ORDERED as follows:

(1)     The Defendant City of Clermont's Motion for Summary Judgment (Doc. 53) is DENIED as to the Plaintiffs' First Amendment Claim (Count VI of the Amended Complaint).  The Court further finds that judgment is due to be entered in favor of the Plaintiffs and against the Defendant as to this claim, and that the Plaintiffs are entitled to both declaratory and injunctive relief.

(2)     Within twenty (20) days from the date of this Order, each Party may file a brief of no more than twenty-five (25) pages limited to the question of whether the provisions of the Code the Court has found to be unconstitutional can be successfully severed from the City of Clermont's signage Code, Chapter 102, or whether the entirety of Chapter 102 should be stricken as unconstitutional.  Neither side shall use this briefing as an opportunity to relitigate any of the issues resolved in this Order or in the Court's Order of February 28, 2013 (Doc. 78).

(3)     The Court will withhold the entry of final judgment, including the entry of any declarations or injunctions, pending the receipt of the Parties' briefs, and upon further order.

(4)     The Court's prior summary judgment Order dated February 28, 2013 (Doc. 78) shall remain in full force and effect.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 27th day of March, 2014.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Maurya McSheehy